Good morning. It pleases the Court. Jay Nelson on behalf of Francisco Torres Felix. I recognize I'm required to watch my own time, so I intend to reserve two minutes of my time for rebuttal at the end. This term the Supreme Court decided Abbott and Gould, which disposes of Mr. Torres Felix's second claim for relief. So I'd like to proceed to his first claim, which is that the District Court committed error in misstating two aspects of Section 924C at the Rule 11 colloquy warranting vacateur and remand in this case. Now, the first error, as we noted in our papers, is that the District Court misstated the maximum penalty applicable to 924C. The second error is that the District Court misstated the elements of 924C. Now, there's no serious dispute in this case that the errors occurred. The statute, for example, sets forth a maximum penalty of life, but the District Court advised Mr. Torres Felix that the maximum penalty was five years. Similarly, with the elements of the offense, the statute itself, as well as this Court's precedent, made clear that Section 924C defines one criminal offense that can be proven in two ways, one way by the use in carry prong and the other way by the in furtherance prong. So there's no serious dispute here that these two errors occurred. The real dispute between the parties appears to be what difference does it make. Did it matter whatsoever? Now, under Dominguez-Benitez, the Supreme Court has told us that the test to apply is whether there's a reasonable probability that Mr. Torres Felix would not have entered his guilty plea on the 924C charge absent the errors. Now, it's important to note with respect to the Dominguez-Benitez test that, first, Mr. Torres Felix does not bear a burden to prove that he would not have entered the plea absent the errors, and second of all, the Court instructs us not to ask whether he should have gone to trial on the charge. Rather, we're simply asking whether there's a reasonable probability that this particular defendant on this particular occasion would not have entered the plea absent the errors. And I submit to the Court there are three reasons why, Mr. Torres Felix, there's a reasonable probability Mr. Torres Felix would not have done so. The first is the circumstances of the plea colloquy itself. Now, for over two years, Mr. Torres Felix stood on his not guilty plea and his right to a trial. He did so in the face of even when presented with a 10-year offer from the government. Even after the government withdrew its 10-year offer and replaced it with a 15-year offer, Mr. Torres Felix steadfastly stood by his not guilty plea and his right to a trial. He did so even after his co-defendant, Mr. Rodriguez-Castellanos, pled guilty and entered into a cooperation agreement against him. He continued to do so until the very eve of trial. The day before jury selection, Mr. Torres Felix finally announced his intention to enter a plea of guilty. Now, but even the Rule 11 colloquy itself demonstrates, I'd say at best, ambivalence on the part of Mr. Torres Felix regarding the 924C charge and his decision to enter a guilty plea on that charge. He repeatedly asserted his innocence as to all accounts in the indictment. Specifically, he asserted his innocence with respect to the 924C charge when he said the pistol in the car wasn't mine. Now, faced with Mr. Torres Felix's repeated protestations of innocence and his other statements of ambivalence, the district court adjourned the proceedings twice in order for Mr. Torres Felix to confer with counsel and the Court regarding his guilty plea. And that really has much to do with your first claim, though, doesn't it? I understand your argument on the misstatement of the elements, but do you see anything in the plea colloquy that relates to the maximum or minimum sentence argument? Certainly, Your Honor. Well, I think what the picture emerges from this plea colloquy that it was fraught with indecision, anxiety, and it was far from a rule of thumb. All right. But, I mean, I understand. He's protesting his innocence. I don't see anything in the plea colloquy that indicates he's worried about the sentence, minimum or maximum. What we have with Mr. Torres Felix is a person who is highly susceptible to Rule 11 error. And so when you look at the error on the maximum sentence --" I'm sorry, you have a person who's what? I didn't know. Highly susceptible to Rule 11 error in that he was highly ambivalent at a minimum about the entry of the plea of guilt. So when you look at the maximum sentence issue, that's precisely the kind of thing that would have pushed a person in Mr. Torres Felix's position over the edge. Why? It's identified as the maximum sentence is 5, and he gets 5 years, even though the minimum sentence obviously was 5 years. Correct. But the record shows that. Well, why does that affect his substantial rights? Well, obviously, under the Morales-Robles case, this Court has held that as a stand-alone claim, the maximum penalty doesn't affect the defendant's substantial rights. But what we submit to the Court is that, taken together with the error on the elements of the offense, that the maximum penalty issue weighs in favor of finding that Mr. Torres Felix wouldn't have entered the guilty plea, and that Mr. Torres Felix was highly anxious about entering the plea. What's the relationship of the two? Mr. Torres Felix, as you understood from the district court, he was facing 5 years on that penalty. Now, given that he was going to presumably enter pleas on all the other counts, the question is, would Mr. Torres Felix have entered the plea knowing that he could have potentially received a consecutive sentence of life as well on the 924C charge? I think the answer is no. Mr. Torres Felix is the sort of – would be precisely the sort of thing that would break the camel's back, the straw that would break the camel's back for Mr. Torres Felix, in that he did not really in his heart of hearts want to enter this plea. He was doing so because he felt it potentially would have been in his strategic interest to do so. But so when you have the maximum penalty, when you – the difference between 5 years and life is a substantial difference. And if Mr. Torres Felix felt he was – he could only possibly get 5 for it, maybe he thought to himself, okay, I can – potentially I could handle 5. But the difference of life is a substantial difference. Right. But he only got 5. Correct. Correct. Ultimately. But the question we're asking ourselves is, the decision – the Nvingas-Benitez test is, what decision would Mr. Torres Felix have made that day? And what we know about Mr. Torres Felix is that he didn't really want to plead to the 924C charge. And so if he faced a maximum of life, it would have been a substantially different calculus for him. And turning to the nature of the – excuse me, the elements of the offense, in that respect – excuse me – Mr. Torres Felix went into the plea call not understanding that the infertile element even existed whatsoever. So based – and that State of Affairs continued even after the Rule 11 copy. And so Mr. Torres Felix was in a position where, if he had learned about the infertile element, if he had learned that there were two methods of proof through which the government could prove his guilt on the 924C charge, he's precisely the kind of defendant who would have said to himself, you know what, even if I'm pleading guilty to the rest of these charges, I think I want to confer with my counsel about this. This is the first I've heard of this infertile thing. I don't understand this. This is the first I've heard of it. It doesn't make any sense to me. I at a minimum want to – maybe I'll plead to the rest of this stuff, but I'm going to take a night, talk to my counsel about this infertile thing, talk about how the government might be able to prove my guilt on the 924C charge, and take a moment to discuss that with his counsel. And maybe he would have come back the next day, and maybe he would have answered a guilty plea nonetheless. But we don't know, because he never had that chance. And that's the relief we're asking the Court here for. Sotomayor Well, don't we have a case where a similar – this is an oddly worded statute, and there was a similar, somewhat garbling of the elements to the jury? Gershengorn Yes. Sotomayor In an instruction? Gershengorn Yes. Sotomayor You said that didn't take away from the integrity of the trial. Why isn't that worse than what happened here, where he has a lawyer who's advising him, and he's got all these other safeguards, and it has to be a factual basis and all that stuff? Gershengorn Well, the question there is quite different. The question there is, essentially, would the jury have convicted him anyway? Was the evidence against him so overwhelming that the jury would have convicted him? And that's basically the question on the fourth – the fourth prong of the plain error test in the jury instruction scenario. And it's much different than what we have here, is assessing whether Mr. Torres-Felix would have entered the plea. And the – in effect, Dominguez-Benitez explicitly tells us not to – not to place too much emphasis on the government's evidence against him. And, in fact, on that point – actually, Your Honor, if I could, I'd like to reserve the remainder of my time for rebuttal. Kagan Okay. Gershengorn Thank you. Kagan Good morning. May it please the Court. Hartley West for the United States. To start with the sentencing matter, the defendant made clear that he was not pleading because he was hoping to get a lower sentence. He says that's why he didn't take the 10-year offer. He wanted something lower. But at the time he entered his open plea, it was the first day of trial. Everything lower was off the table. He got the lowest sentence he possibly could have gotten under the law and substantially lower than his guidelines range. He got the mandatory minimum for all of the crimes to which he pled guilty that had mandatory minimum. But he expressed great reluctance about pleading guilty several times during the plea proceeding. Gershengorn I disagree with that, Your Honor. The only time he expressed reluctance was during the initial in-camera proceeding where he said, well, then I may as well just take my chances and go to trial. After that, the Court gave him numerous opportunities to back out, to go ahead and go to trial, and every time he said, no, I want to go to trial – I'm sorry, no, I want to plead guilty. What he did say was he said the gun in the car, it wasn't mine, and the stuff in the back, that wasn't mine. I was just doing a favor for a friend. But that purported defense is no defense at all. What he's admitting to and what the facts indisputably show was that he had a gun that he knew was in the car with the drugs. That, by definition, is carrying. And what the government needed to show was that carrying was done during and in relation to a drug trafficking offense. So the facts that are admitted and really undisputed here, that the gun was in the car under Muscarello, that is carrying. That's the endgame under the law. So what he was saying, apparently, that he thought was his defense, really was no defense at all. Moreover, he had already been told that he was subject to maximum prison terms of life on the count one and count two offenses, and, moreover, that that was within the court's discretion whether those could be imposed consecutively. So there is no reasonable probability that knowing he could have been subjected to a third consecutive life sentence on the 924C count could possibly have changed his assessment of whether to go to trial or to plead guilty. Turning to the elements of the offense, the – it sounds like counsel is distinguishing Nobari on prong three, the reasonable probability test. But what Nobari is based on is step four of the claim error analysis, and that is whether any claim of Rule 11 error seriously affected the fairness, integrity, or public reputation of the proceedings. And Nobari held that it doesn't. And the reason for that, of course, is because, as the Court explained, the prongs under 924C are so conceptually similar and the evidence for them also so similar that the conflation of the two elements or the two prongs does not seriously affect fairness. Well, counsel, he says to the court, the pistol in the car wasn't mine and the stuff in the car wasn't mine either. I was just doing someone a favor. And then the court responds, okay, if those are the cases, then we'll go to trial and try the case because I don't want you to take a plea if you're indicating you're not guilty of these offenses. You don't think that's reluctance to plead guilty? No, I don't, because he turns around and says, I want to go ahead and plead guilty. He says he's thinking that it wasn't an offense. He's – that the gun in the car wasn't his, putting aside the fact that he bought it, and that the drugs in the back. He admits that the gun was in the car and the drugs were in the car and he was in the car, and that's the end of the story. But moreover, under the question of whether he was doing this voluntarily and with full information about the elements. So he's – I mean, it's obvious he's taking a lot of time here.  guilty. The plea colloquy has to be adjourned several times and then go to an in-camera session. This isn't a typical taking of a plea, would you say? It may not be typical, Your Honor, but the reason that the court adjourned was because the court was making every effort. Well, sure. And took substantial time to ensure that this was knowing and voluntary and, of course, said several times, I don't want you to come back here on appeal and say, oh, I didn't really mean it, which is what we have here. And the reason why it's the end, Your Honor, of the analysis, or we believe should be, is as the Supreme Court stated in the Dominguez case, the four factors that the court laid out the factors that courts should consider in assessing whether there's a reasonable probability that the defendant would have proceeded to trial, one of those, and a key one of those being the overall strength of the government's case. Now, here the facts were overwhelming. And then, second, whether there were any possible defenses. There was no possible defense here. The gun was in the car with him, knowingly, and so were the drugs. That's carrying during in relation to a drug trafficking offense. Moreover, the defendant did state once at the in-camera proceeding at the outset that he was not intending to go to trial, but after that, every single chance the court gave him to back out, and I believe there were maybe five, he said, no, I want to go ahead and plead guilty, and that's his attorney confirmed that. Those are the factors set forth in Dominguez-Benitez, and that's why there is no reasonable probability that Mr. Torres-Felix would have actually proceeded to trial. Now, again, this is the day of trial, so this is not a choice between pleading open and accepting a rescinded plea agreement. This is pleading open versus going to trial. He got the lowest possible sentence he possibly could have gotten. I think that covers all my points. If the Court has further questions, I'm happy to address them. Otherwise, we'll submit on the briefs and ask that the Court affirm the convictions in the sentence. Ginsburg. Are there any further questions? Thank you. Thank you, Counsel. First, Your Honor, with respect to the strength of the government's case, the case was not nearly as strong as the government would have it, and I think this speaks, Judge Schroeder, to your question regarding the jury instruction. The evidence the government was prepared to present evidence that the gun was sitting on the front passenger seat of the car, but what the evidence was also going to show was that immediately preceding the arrest, at which time the agents came to the car and found the gun lying on the front seat of the car, the confidential informant came over to the car in order to inspect the drugs. Now, any person using a firearm in furtherance of a drug trafficking offense would typically keep it concealed, keep it in your waistband, keep it in a holster, keep it in your hand, keep it in a way that you can use it to defend yourself. You don't leave it on the front passenger seat in order for your potential adversary to come grab it, use it against you, take your money, take your drugs, and potentially shoot you with it. So in terms of the government's argument that Mr. Torres-Felix had no defense to this charge, the government's evidence itself presented a very strong defense for Mr. Torres-Felix. And I think that goes to the jury instruction issue and speaks to the reason why the jury instruction cases are a poor analogy here, because those cases turn ultimately on whether or not the jury, the evidence was so overwhelming that the jury would have convicted him. Here, we have a very strong trial defense. Mr. Nelson, the government ended its argument with the fact that he got the lowest possible sentence, but that's not really dispositive of your reasonable probability argument under Dominguez-Bonitez, is it? Absolutely right, Your Honor. And the reason is that Mr. Torres-Felix could have further minimized his exposure by taking the 924C to trial and by winning it. In fact, 924C is not subject to acceptance of responsibility points. So Mr. Torres-Felix had absolutely nothing to lose by going to trial on that charge, particularly when it was a strong trial defense. Well, except a sentence that was far in excess of the minimum. I'm sorry, Your Honor? Except for if he were convicted, he has the possibility, and if you win this case, he has the possibility of serving more time. That's true, Your Honor, but he faces the same exposure whether he pleads open or whether he goes to trial on that. So in that respect, he could have minimized his exposure by taking the case to trial and defeating the 924C charge. And I see that I have just a couple of seconds left. You're in the red. Thank you, Your Honor. Is there any further questions? Thank you. Thank you. The case just argued is submitted for decision.
judges: Bennett, Schroeder, Thomas